**In re Gary Paul LUMLEY, Debtor.**

**Leah Gay Lumley, Plaintiff,**

v.

**Gary Paul Lumley, Defendant.**

**Bankruptcy No. 00–60583.**
**Adversary No. 00–6038.**

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Feb. 8, 2001.

J.R. Victor, Springfield, MO, for plaintiff.

Connie Montgomery, Smith, Montgomery & Suhr P.C., Springfield, MO, for defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Plaintiff Leah Gay Lumley (Leah) objected to the discharge of a debt in the amount of $11,000.00 incurred during the course of her divorce from debtor Gary Paul Lumley (Gary). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUE PRESENTED

In an amended judgment and decree of dissolution, the Circuit Court of Greene County, Missouri (the Circuit Court) assigned a joint debt to Household Finance to Gary, and ordered Gary to hold Leah

harmless thereon. The Bankruptcy Code (the Code) provides that a property settlement debt is nondischargeable if the debtor has the ability to pay the debt and discharging the debt would be more detrimental to debtor's former spouse than beneficial to the debtor. Gary failed to prove an inability to pay the debt. Leah, on the other hand, proved that discharging the debt would be detrimental to her because her average monthly expenses exceed her average net income without the burden of being forced to pay the obligation to Household Finance. Is Leah's inability to pay the debt in light of Gary's ability to pay sufficient detriment to hold the debt nondischargeable.

## DECISION

A former spouse's inability to pay a property settlement debt is sufficient detriment, pursuant to section 523(a)(15)(B) of the Code, to hold the debt nondischargeable, if debtor has the ability to pay.

## FACTUAL BACKGROUND

Gary and Leah were married on February 26, 1983, and the marriage was dissolved by a dissolution decree entered by the Circuit Court on April 11, 1998. They have two sons, one born in 1986 and one born in 1988. Gary and Leah agreed that they would share custody of the two boys and that Leah would be designated as the primary physical custodian. According to the Marital Settlement and Separation Agreement, Gary agreed to pay child support in the amount of $495.38.[1] On April 29, 1998, the Circuit Court of Greene County, Missouri entered an Amended Judgment and Decree for the purpose of assessing against Gary a debt to Household Finance.[2] In assessing this debt against Gary, the Circuit Court ordered Gary to hold Leah harmless thereon. At that time the debt was in the approximate amount of $7,958.97. Gary has made no payments on the debt to Household Finance. Since Leah is also obligated on the debt, Household Finance has attempted to collect the debt from her. She has made no payments to Household Finance at this time, however.

On April 7, 2000, Gary filed this Chapter 7 bankruptcy petition. He listed the debt to Household Finance as an unsecured debt for a personal loan in the amount of $11,000.00. He also listed Leah as a co-debtor on this obligation. Leah filed this adversary proceeding objecting to the discharge of the debt to Household Finance, pursuant to section 523(a)(15) of the Code. This Court scheduled a hearing for January 25, 2001. At the hearing, both Gary and Leah testified that they incurred the debt to Household Finance as part of a debt restructuring in October of 1994. They used the proceeds of the loan to pay down credit card debt.

Gary testified that he works for the City of Springfield, Missouri in the Building Maintenance Department. He also testified that he is a Master Electrician, and that he does electrical work as an independent contractor. He stated that he is currently earning $1,724.86 per month from his regular employment, and that he netted approximately $3,000.00 from his electrical work in 2000. He stated that he shares a home with a companion, and he pays her $500.00 a month for his share of the rent, utilities, food, and other costs. According to both his bankruptcy schedules and his testimony, his other monthly expenses include (1) child support: $495.38; (2) car payment: $377.09; (3) automobile insurance: $50.00; (4) transportation: $100.00; (5) miscellaneous expenses: $100.00; (6) personal care: $130; and (7) personal property taxes: $27.00. His current monthly expenses, thus, total $1,779.47.

Leah testified that her net monthly income is $1,912.88, plus child support of $495.38, for total monthly income of

---

1. Def.Ex. # 1.

2. Def.Ex. # 2.

$2,408.26. Her current monthly expenses total $2,526.70, including (1) housing expenses: $595.00; (2) utilities: $204.50; (3) automobile expense: $388.85; (4) insurance: $221.39; (5) installment contract payments: $494.00; and (6) other living expenses: $622.96.[3] Neither party disputed that the other party's expenses are both reasonable and necessary. Leah testified that she owns her home, that her mortgage is approximately $68,000.00, and that the fair market value of the home is approximately $85,000.00. She also stated that she obtained an amortization schedule from Mortgage Partners to determine if she could take out a second mortgage on her home in order to pay the debt to Household Finance. According to the schedule, a loan of $11,000.00 for a period of ten years at 11 percent interest would require monthly payments in the amount of $151.53.[4] She testified that after she obtained the information, she realized she could not make the monthly payments.[5] She asks this Court to, therefore, find that the debt is nondischargeable because Gary has the ability to pay the debt, and she does not.

### DISCUSSION

■ Section 523(a)(15) of the Code establishes a rebuttable presumption of nondischargeability as to property settlement obligations. The nondebtor former spouse need only prove that the debt arose from a property settlement for the debt to be nondischargeable, unless the debtor can prove that he does not have the ability to pay the debts, or that the benefit to the debtor of a discharge is outweighed by the resulting detriment to the former spouse. Section 523(a)(15) reads as follows:

3. Pl.Ex. A.

4. Pl.Ex. F.

5. Pl.Ex. F.

6. 11 U.S.C. § 523(a)(15).

7. *Fellner v. Fellner (In re Fellner)*, 256 B.R. 898, 902–03 (8th Cir. BAP 2001); *Rush v.*

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . .

■ (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.[6]

As several Courts have noted, section 523(a)(15) contains a shifting burden between the debtor and the plaintiff.[7] The burden of persuasion is on Leah to show that the debts in question arose from a property settlement in connection with a divorce.[8] The burden of going forward then shifts to Gary, who must prove that he does not have the ability to pay the debt, or, if he has the ability to pay the debt that the benefit to him of a discharge

*Rush (In re Rush)*, 237 B.R. 473, 475 (8th Cir. BAP 1999); *Kirchner v. Kirchner (In re Kirchner)*, 206 B.R. 965, 968 (Bankr.W.D.Mo. 1997); *Florio v. Florio (In re Florio)*, 187 B.R. 654, 657 (Bankr.W.D.Mo.1995).

8. *Rush*, 237 B.R. at 475.

outweighs the detriment to Leah.[9] Neither party disputes that the debt in question here arose from the divorce, therefore, I find that Leah has met her initial burden of persuasion.

Gary must, thus, prove that he cannot pay the debt. Gary testified that he is a master electrician who used to own his own business. He said that despite working long hours, he lost money. He, therefore, went to work for the City of Springfield, but he continues to do some electrical work on the side. Gary stated that in 2000 he billed approximately $15,000.00 for electrical work and paid approximately $4,000.00 for labor and $8,000.00 for materials. He nets $796.00 every two weeks from the City.[10] That translates into an annual salary of $20,696 and a net monthly salary of $1,724.66. In addition, Gary earns approximately $3000.00 a year, or on average $250.00 a month, from his electrical work. I find that Gary's average net monthly income is, therefore, $1,974.66.

Gary testified that he pays $500.00 a month for rent, utilities, and food, that he makes a car payment in the amount of $377.09, that he pays child support in the amount of $495.38, and that he spends approximately $100.00 a month entertaining his children. In addition, according to his bankruptcy schedules, he spends $50.00 a month for automobile insurance, $100.00 a month for transportation, $130.00 a month for personal care, and $27.00 a month for personal property taxes. I find, therefore, that his current monthly expenses total $1,779.47, leaving net disposable income of $195.19. According to Leah's amortization schedule, Gary could pay the debt to Household Finance over 10 years at 11 percent interest by making monthly payments of $151.53.[11] Thus, I find that Gary has the ability to pay this debt. I must now balance the benefit to Gary of discharging a debt he has the ability to pay against the detriment to Leah if she has to pay the debt.

▮ Section 523(a)(15)(B) requires the Court to perform a balancing of the harms.[12] In performing that analysis, Courts have considered the following three factors: (1) the income and expenses of both parties; (2) the nature of the debt in question; and (3) the former spouse's ability to pay.[13] In other words, the Court must compare the standard of living of the debtor against the standard of living of the nondebtor former spouse.[14] As the Court quoted in *In re Smither,* "[t]he legislative history of this section [523(a)(15)(B) ] essentially requires this Court to make a value judgment in deciding which party suffers most." [15] Even if the debtor can pay the debt, in order to preserve the debtor's fresh start, the Court must find the debt dischargeable if the nondebtor former spouse could easily pay the debt, or if the debt is uncollectible as to the nondebtor former spouse.[16] In this case, I will look first to the benefit to Gary of discharging the debt for $11,000.00. Gary is current on his child support. His expenses are modest. He incurred approximately $34,181.99 in unsecured debt prior to his bankruptcy filing. All but the $11,000.00 at issue here has now been dis-

9. *Id.*

10. *Def.Ex. # 5.*

11. *Pl.Ex.* F.

12. *Beckford v. Beckford (In re Beckford),* 257 B.R. 7 (Bankr.C.D.Cal.2000),

13. *Humiston v. Huddelston (In re Huddelston),* 194 B.R. 681, 689 (Bankr.N.D.Ga.1996). *See also Florio v. Florio (In re Florio),* 187 B.R. 654, 658 (Bankr.W.D.Mo.1995).

14. *In re Smither,* 194 B.R. 102, 110 (Bankr. W.D.Ky.1996).

15. *Id.* (quoting *Phillips v. Phillips (In re Phillips),* 187 B.R. 363, 369 (Bankr.M.D.Fla. 1995)).

16. *Campbell v. Campbell (In re Campbell),* 198 B.R. 467, 474 (Bankr.D.S.C.1996).

438

charged.[17] The City of Springfield deducts $130.00 a month for his retirement.[18] He owned a mobile home, but this Court lifted the stay and the mobile home has now been repossessed. Any deficiency that resulted from the repossession is, likewise, discharged. Since his discharge, he has purchased a 1998 Blazer with approximately 39,000 miles on it. He, thus, has secure employment, a new car, and the ability to earn extra income as needed.

In contrast, Leah testified that she is a nursing assistant at the Federal prison. She earns $32,000.00 a year and nets $1,912.88 a month.[19] In addition she receives $495.38 per month in child support for total net monthly income in the amount of $2,408.26. She owns a home valued at $85,000, with a lien of $68,000.00. She owns a 1998 Chevrolet Lumina valued at $10,000.00 with a lien of $11,000.00. She has a 401K plan through her employer with a value of $31,391.59, and she has incurred unsecured debt in the approximate amount of $12,480.78.[20] Her mortgage payments total $575.00 per month, maintenance on her home totals $20.00 per month, her utilities total $204.50 per month, her automobile expenses, including the payment, total $388.85 per month, her insurance payments total $221.39, installment contract expenses total $494.00, and all other living expenses total $622.96.[21] Her average monthly expenses total $2,526.70, leaving no disposable income with which to pay the debt to Household Finance. Leah testified that she borrows money from her mother and other family members in order to make ends meet.

In most section 523(a)(15) cases, the debtor does not have the ability to pay the debt. Or, even if he has the ability to pay, the benefit to the debtor of a discharge of the debt is at least equal to the detriment to the former nondebtor spouse. In this case, however, Gary has the ability to pay the debt, and he failed to prove any benefit to him of discharging the debt other than the fact that he would have an additional $195.00 of disposable income each month. On the other hand, Leah has no disposable income, and must borrow money from family members just to meet her monthly expenses without making any payment on the debt to Household Finance. Both Gary and Leah are jointly obligated on the debt to Household Finance, so if the debt is discharged as to Gary, Leah will be solely responsible for its payment. Leah and Gary's income and expenses are relatively equal given that Leah provides a home for their two children, and Leah has no excess disposable income to pay the obligation. I will, therefore, find that the benefit to Gary of a discharge of the debt to Household Finance is outweighed by the detriment to Leah of such a discharge. Therefore, to the extent Leah actually has to pay the debt to Household Finance, Gary's obligation to hold her harmless is nondischargeable.

An Order in accordance with this Memorandum Opinion will be entered this date.

17. Case No. 00–60583, Doc. # 1, Schedule F.

18. *Id.* at Schedule I.

19. Pl.Ex. A.

20. Pl.Ex. B.

