**In re Alvin Coolidge LEWIS, Debtor.**

**and**

**Grace T. Lewis, Plaintiff,**

**v.**

**Alvin Coolidge Lewis, Jr., Defendant.**

**Bankruptcy No. 05–54910–293.**
**Adversary No. 06–4017–659.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Jan. 17, 2007.

T.J. Mullin, T.J. Mullin PC, Clayton, MO, Norman W. Pressman, Robert Breidenbach, Goldstein & Pressman PC, St. Louis, MO, for Debtor.

Scott A. Greenberg, Sandberg, Phoenix & von Gontard, St. Louis, MO, for HSBC Mortgage Services.

Michael R. Hanson, Hanson Law Office, O'Fallon, MO, for Grace T. Lewis.

Berry F. Laws, III, Martin, Leigh, Laws & Fritzlen, PC, Kansas City, MO, for HomEq Servicing Corporation.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATHY A. SURRATT–STATES, Bankruptcy Judge.

The matter before the Court is Plaintiff's Complaint to Determine the Dischargeability of Particular Debts Pursuant to 11 U.S.C. Section 523, Debtor's Answer, Defendant Alvin C. Lewis Jr.'s Pre–Trial Memorandum and Plaintiff's Reply to Defendant's Pretrial Brief. A hearing in this matter was held on March 28, 2006, where both parties appeared in person and by counsel. Upon consideration of the record as a whole, the Court makes the following **FINDINGS OF FACT:**

Defendant/Debtor Alvin C. Lewis, Jr. ("Defendant") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 30, 2005. Trustee A. Thomas DeWoskin is the duly appointed acting Chapter 7 Trustee. Plaintiff Grace Tina Lewis ("Plaintiff") and Defendant were divorced on February 13, 2002, and

are the parents of three minor children. A Missouri State Court issued a divorce decree which outlined each party's respective responsibilities. The relevant portion of the divorce decree provides that Plaintiff was to have the marital home at 1826 Highgrove, O'Fallon, Missouri (the "Marital Home") and Defendant was to make the mortgage payments on the Marital Home as a form of child support. In the event the mortgage was paid off or the house was sold, Defendant was to pay $1,180.00 per month to Plaintiff as child support.

Several years after the divorce, Defendant approached Plaintiff about refinancing the debt secured by the Marital Home to obtain a favorable interest rate to lower the monthly payment. The parties understood that Defendant would quit claim the Marital Home back to Plaintiff after he obtained the desired refinancing. Plaintiff thereafter quit claimed the Marital Home to Debtor. Debtor initially had trouble refinancing the mortgage on the Marital Home but was able to obtain refinancing on his second attempt at a lower interest rate. However, Debtor failed to transfer the Marital Home back to Plaintiff after obtaining refinancing. Debtor repaid the original mortgage and some of his personal debts from the refinance.

Debtor thereafter transferred the Marital Home in a joint tenancy with his current wife. After refinancing the Marital Home, Debtor was left with a larger mortgage payment due to increased escrow expenses. Debtor maintained these mortgage payments until he received notice that Plaintiff was suing him in a state court proceeding. Plaintiff ultimately succeeded in her state court proceeding against Debtor, however this Court was not provided with a copy of the state court order. Debtor did not have sufficient income to pay the mortgage and the judg-ment in the state court proceeding. Furthermore, Debtor testified that he earns less at his current occupation since his divorce from Plaintiff because additional overtime is now unavailable. Consequently, Debtor ceased making mortgage payments and began paying direct child support payments.

Plaintiff argues that these facts establish that Debtor is in violation of the divorce decree. Debtor should not be allowed to choose whether to pay the mortgage or child support. Otherwise, Debtor would dispossess Plaintiff and his children from the Marital Home and receive the benefit of a discharge to Plaintiff's detriment. Consequently, this Court should declare Debtor's nonpayment of the mortgage obligation as child support nondischargeable under Sections 523(a)(5) and/or (a)(15) or nondischargeable under Sections 523(a)(4), or (a)(6).

Defendant argues that Sections 523(a)(5) and (a)(15) do not apply to the facts of this case and Sections (a)(4) and (a)(6) are not established under the facts of this case. There is no evidence of how much damage Plaintiff sustained as a result of Defendant's actions or omissions. There is no evidence that Defendant benefitted from his failure to quit claim the Marital Home back to Plaintiff. Therefore, Plaintiff has no cause of action in this case. The Court weighs the arguments presented by the parties and provides its decision below.

### *JURISDICTION*

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334 (2005) and Local Rule 81–9.01(B) of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (2005). Venue is proper in this District under 28 U.S.C. § 1409(a) (2005).

## CONCLUSIONS OF LAW

■ Plaintiff moves this Court to except from discharge Defendant's obligation to maintain the Marital Home under to Section 523(a)(5). Pursuant to Section 523(a)(5), a debtor is not entitled to discharge a debt:

> (5) to a spouse, former spouse or a child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement, but not to the extent that—
>
>> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise . . .; or
>>
>> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5) (2005). A plaintiff must satisfy three elements to revoke a debtor's discharge under Section 523(a)(5): "(1) the debt must be in the nature of alimony, maintenance or support; (2) it must be owed to a former spouse or child, and (3) it must be in connection with a separation agreement, divorce or property settlement agreement." *Mesenbrink v. Eiklenborg (In re Eiklenborg)*, 286 B.R. 718, 723–24 (Bankr.N.D.Iowa 2002).

Here, Plaintiff has failed to show that Defendant has failed to satisfy his obligations under the divorce decree. The dissolution decree indicated that Defendant was allowed to either pay the mortgage on the Marital Home until that mortgage was paid off or the Marital Home was sold. If this condition occurred, Defendant was required to pay $1,180.00 per month to Plaintiff for child support. De-

fendant obtained title to the Marital Home and refinanced the mortgage on the Marital Home thereby repaying the original mortgage. Defendant thereafter commenced child support payments to Plaintiff in the amount of $1,180.00 per month. Although Plaintiff presented some evidence that Defendant was in arrears on these payments, Defendant cured the delinquency prior to the hearing in this case. Defendant has therefore complied with the terms of the dissolution decree in this case. Consequently, Defendant's obligation to maintain the Marital Home is dischargeable under Section 523(a)(5).

■ Plaintiff moves this Court to except from discharge Defendant's obligation to maintain the Marital Home under to Section 523(a)(15). Pursuant to Section 523(a)(15) a debtor is not entitled to discharge a debt:

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>>
>> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15) (2005). "Section 523(a)(15) was enacted for the specific purpose of prohibiting the transfer of debts from an individual to a former spouse by declaring bankruptcy." *Wallander v. Wallander (In re Wallander)*, 324 B.R. 746, 756 (Bankr.N.D.Iowa 2005); *Lee v. O'Shaughnessy (In re O'Shaughnessy)*, 301 B.R. 24, 29 (Bankr.N.D.Iowa 2003). Unless a debt is a non-support debt created under a divorce decree, it is not subject to nondischargeability under Section 523(a)(15). *Mesenbrink*, 286 B.R. at 721.

Here, Defendant complied with the terms of the dissolution decree as discussed above. Defendant's nonpayment of the present mortgage and subsequent foreclosure on the Marital Home is outside the scope of the dissolution decree. Consequently, Defendant's obligation to maintain the Marital Home is dischargeable under Section 523(a)(15).

■ Plaintiff moves this Court to except from discharge Defendant's obligation to maintain the Marital Home under Section 523(a)(4). Pursuant to Section 523(a)(4) a debtor is not entitled to discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4) (2005). A plaintiff must establish (1) a fiduciary relationship between debtor and plaintiff; and (2) a fraud or defalcation occurred while debtor performed in a fiduciary capacity to sustain a nondischargeability claim under Section 523(a)(4). *Zio Johnos Inc. v. Ziadeh (In re Ziadeh)*, 284 B.R. 893, 898 (Bankr.N.D.Iowa 2002). A fiduciary relationship can be established by an express or technical trust. *Id.* at 899. Where a relationship is merely contractual, it does not create a fiduciary duty if one party fails to perform. *Id.* at 900.

■ Here, the facts of this case do not support a finding that a fiduciary relationship existed between Plaintiff and Defendant. The parties merely had an understanding that Plaintiff would quit claim the Marital Home to Defendant so Defendant could obtain a more favorable mortgage rate. There is no indication that the parties created a trust that placed Defendant in a fiduciary capacity over either Plaintiff or the parties' minor children. Furthermore, the parties' agreement did not rise to the level of a contract, and even if did, Defendant's subsequent refusal to quit claim the Marital Home back to Plaintiff after obtaining favorable financial terms did not create a fiduciary duty. Consequently, Defendant's obligation to maintain the Marital Home is dischargeable under Section 523(a)(4).

■ Plaintiff moves this Court to except from discharge Defendant's obligation to maintain the Marital Home under Section 523(a)(6). Pursuant to Section 523(a)(6), a debtor is not entitled to discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (2005). The elements of " 'willful' and 'malicious' are two distinct requirements that a creditor must establish by a preponderance of the evidence." *Grunwald v. Beck (In re Beck)*, 298 B.R. 616, 621–22 (Bankr.W.D.Mo.2003) (citing *Grogan v. Garner*, 498 U.S. 279, 286–287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *see also Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir.1991)).

■ "A willful injury requires more than an intentional act that leads to an injury; rather, the debtor must have intended the consequences of the act." *Id.* at 621. To establish the willful element, the actor must "[know] that the consequences are certain or substantially certain to result from his act." *Id.* (citing *Barclays/American/Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881

(8th Cir.1985)). The term " 'malicious' requires the debtor's actions to be 'targeted at the creditor ... at least in the sense that the conduct is certain or almost certain to cause financial harm.' " *Long,* 774 F.2d at 881.

Here, Defendant's refusal to reconvey the Marital Home to Plaintiff and his subsequent default after refinancing the original mortgage does not demonstrate either a willful or malicious injury under Section 523(a)(6). There was no evidence presented at trial that it was Defendant's original intent to injure Plaintiff at the time he initially approached her about refinancing the original mortgage. Defendant was unaware that the terms of the new mortgage would be unsustainable. Defendant's subsequent decision to make child support payments in lieu of maintaining the Marital Home was a purely economic decision.

Furthermore, Defendant's actions were not targeted to Plaintiff in an attempt to exact an economic injury. Although Defendant was behind on his child support for a period before this matter was heard, Defendant is now current in his obligations under the dissolution decree. These facts do not establish a malicious intent on behalf of Defendant. Consequently, Defendant's obligation to maintain the Marital Home is dischargeable under Section 523(a)(6).

By separate order, judgment will be entered in favor of Defendant.