# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 04-6001WA

_____

In re: Jerry Edward Portwood,     *

                *

      Debtor.    *

                *

Jerry Edward Portwood,    *       Appeal from the United States

                *       Bankruptcy Court for the

      Appellant.    *       Western District of Arkansas

                *

        v.    *

                *

Gwendolyn S. Young,    *

a/k/a Gwendolyn Foskey,    **

                *

      Appellee.    *

_____

Submitted: April 13, 2004
Filed: April 30, 2004

_____

Before KRESSEL, Chief Judge, FEDERMAN, and MAHONEY, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

_____

Debtor Jerry Portwood appeals an order of the bankruptcy court[1] determining that his obligation to his former spouse, Gwendolyn Foskey, was nondischargeable. We affirm.

## FACTUAL BACKGROUND

Jerry and Gwendolyn married on May 12, 1975. On September 15, 1999, in the Circuit Court for Taylor County, Florida, the Honorable Thomas J. Kennon, Jr. dissolved the marriage by entering a Final Judgment of Dissolution of Marriage (the Decree). Jerry and Gwendolyn had twelve children during the marriage. At the time of the Decree, seven children were under the age of 18. Of those seven, six remained with Gwendolyn in Florida, and one son, Darrin, chose to live with his father, who lived in Arkansas at the time. Judge Kennon found that Gwendolyn was capable of earning net income of approximately $1,654.60 per month and that Jerry was capable of earning net income of approximately $1,441.73 per month. He, therefore, ordered Jerry to pay child support in the amount of $796.00 per month, and he ordered Gwendolyn to pay child support in the amount of $351.39. Judge Kennon also ordered Jerry to pay Gwendolyn lump sum alimony in the amount of $42,000. Judge Kennon found that Gwendolyn was entitled to lump sum alimony, but that Jerry did not have the ability to pay it. He, therefore, ordered Jerry to pay Gwendolyn $350.00 per month for ten years.

On April 9, 2003, Jerry filed a Chapter 7 bankruptcy petition in the Western District of Arkansas. He listed the debt to Gwendolyn as an unsecured, non-priority debt. On June 12, 2003, Jerry filed an adversary proceeding to obtain a determination as to the dischargeability of the debt to Gwendolyn. Jerry claims the award of lump sum alimony is not in the nature of support, and was in fact part of the parties'

---

[1]The Honorable Richard D. Taylor, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

property settlement at the time of the Decree. Gwendolyn responded to the Complaint, but on October 14, 2003, when the court held a trial, she failed to appear. Jerry testified at the hearing and submitted the Decree. The court ruled that Judge Kennon characterized the award as alimony, and that Jerry failed to prove that Judge Kennon intended the award to be something other than in the nature of alimony. The court, therefore, found that the debt was nondischargeable. Jerry appeals that Order.

## STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[2] We review the legal conclusions of the bankruptcy court *de novo.*[3] A bankruptcy court's finding that an award in a dissolution proceeding is in the nature of alimony is a factual finding that we will not disturb unless such finding is clearly erroneous.[4]

---

[2]*Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[3]*First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997).

[4]*Adams v. Zentz*, 963 F.2d 197, 199 (8th Cir. 1992). *See also Falk & Siemer, L.L.P. v. Maddigan (In re Madigan)*, 312 F.3d 589, 595 (2nd Cir. 2002) (holding that the reviewing court applies the clearly erroneous standard when an appellant appeals the trial court's determination that a debt is in the nature of support under 11 U.S.C. § 523(a)(5).

DISCUSSION

This adversary proceeding is a bit unusual for two reasons. First, Jerry filed the Complaint seeking a determination that the debt is dischargeable. Thus, he was a plaintiff faced with the challenge of proving a negative, that the award was not alimony. Second, Gwendolyn did not appear at the hearing, so the court had before it only evidence submitted by Jerry. Jerry offered, and the court admitted, the Decree. The court began with the language in the Decree, and so shall we. This was a contested divorce, and Judge Kennon entered the Decree after a lengthy trial. He stated in the Decree:

> The Wife did not offer a plan to rehabilitate herself and accordingly would not be entitled to rehabilitative alimony. The Husband does not have the ability to pay permanent periodic alimony. The Wife is entitled to lump sum alimony, however, the Husband is unable to pay lump sum alimony in one single payment. Accordingly, the Husband shall pay lump sum alimony in installments.[5]

Judge Kennon went through a very thorough analysis of marital assets and liabilities.[6] He determined that Jerry would retain property with a net value of $8,342.46, and that Gwendolyn would retain property with a net value of $32,298.54. Judge Kennon then stated that the "parties shall sell the Grass Company property. From the proceeds of the sale of the Grass Company property the Husband shall receive the first $23,956.00 to equalize the above equitable distribution."[7] Finally, under the heading SPOUSAL SUPPORT, Judge Kennon ordered Jerry to pay directly to Gwendolyn "non-modifiable lump sum alimony in the amount of $42,000.00 to be paid in installments

---

[5]Appellant's Appendix, Doc. # 1, Exhibit A (Final Judgment of Dissolution of Marriage), ¶ E., pg. 3.

[6]*Id.* at pg. 4-5.

[7]*Id.* at pg. 6.

4

of $350.00 per month beginning October 1, 1999, and continuing and including October 1, 2009."[8]

The bankruptcy court found that debts categorized as alimony in a divorce decree are generally excepted from discharge pursuant to section 523(a)(5) of the Bankruptcy Code. Section 523(a)(5) provides that:

> (a)    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> (5)    to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
> . . .
>
> (B)    such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.[9]

The bankruptcy court held that Gwendolyn bore the initial burden, even as the defendant in this case, to prove that the debt was in the nature of alimony, and that it arose from a divorce. The court found that she sustained that burden when the court

---

[8]*Id.* at pg. 8.

[9]11 U.S.C. § 523(a)(5)(B).

received the Decree offered into evidence by Jerry. Thus, the court found the burden shifted to Jerry to prove the debt was not in the nature of alimony.

The bankruptcy court then looked to the function the state court judge intended the award to serve in determining whether the award was, indeed, alimony.[10] The bankruptcy court concluded that Judge Kennon labeled this award as alimony and included an analysis of the three types of alimony available, thus, he intended the award to serve as spousal support. We find no error in this conclusion.

Jerry argues that the bankruptcy court erred in shifting the burden of proof to him to prove the award was not alimony. He maintains Gwendolyn, as the party wishing to except a debt from discharge, must prove the award was, in fact, alimony. The burden of proof in establishing a section 523(a)(5) exception to discharge is on the non-debtor spouse.[11] Unlike other exceptions to discharge, which are strictly construed against the objecting creditor, however, domestic relations exceptions are liberally construed in favor of the objecting creditor.[12] Gwendolyn had to show that the obligation was alimony, then the burden of going forward and proving the obligation was not in the nature of alimony shifted to Jerry.[13] Section 523(a)(5) states that a debt for alimony is excepted from discharge unless it is not actually in the nature of support. Thus, there is a presumption of nondischargeability for an award labeled as alimony, as this award was. Once the bankruptcy court received the Decree, which labeled the award as alimony, Gwendolyn had sustained her burden.

---

[10]*Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir. 1983).

[11]*Edenfield v. Fussell (In re Fussell)*, 303 B.R. 539, 544 (Bankr. S.D. Ga. 2003).

[12]*Id.*

[13]*Id.*

Jerry also argues quite forcefully that an award for lump sum alimony does not exist in Florida. The bankruptcy court is not the proper venue to make that argument. If Jerry wished to contest the findings of Judge Kennon, he needed to appeal the findings in the Decree at the time. The validity of a state court order, and which court may make such a determination, is controlled by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine evolved from two United States Supreme Court cases.[14] In *Feldman* the Supreme Court held that lower federal courts possess no power whatsoever to sit in direct review of state court decisions.[15] In *Rooker* the Supreme Court held that no court of the United States, other than the United States Supreme Court could "entertain a proceeding to reverse or modify the judgment of a state court."[16] The Eighth Circuit holds that the Rooker-Feldman doctrine "forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions."[17] The Rooker-Feldman Doctrine, therefore, prohibits us from reviewing the validity of the Judge Kennon's decision.

Finally, Jerry argues that the bankruptcy court failed to properly apply the five factors set out in *Moeder v. Moeder (In re Moeder)*[18] in aid of its determination as to whether the debt was in the nature of alimony. *Moeder* requires a court to consider

---

[14]*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

[15]*Feldman*, 460 U.S. at 482, 103 S. Ct. at 1315.

[16]*Rooker*, 263 U.S. at 416, 44 S. Ct. at 150.

[17]*Lemonds v. St. Louis County, Missouri*, 222 F.3d 488, 492 (8th Cir. 2000), *Cert. Denied, Halbman v. St. Louis County*, 531 U.S. 1183 , 121 S. Ct. 1168, 148 L. Ed. 2d 1026 (2001); *See also Snider v. City of Excelsior Springs, Missouri*, 154 F.3d 809, 811 (8th Cir. 1998).

[18]220 B.R. 52 (B.A.P. 8th Cir. 1998).

the following: (1) the income and needs of the parties at the time of the decree; (2) whether the obligation terminates on death or remarriage, (3) the number and frequency of payments; (4) the tax treatment of the obligation; and (5) the label given to the obligation in the decree.[19] The bankruptcy court found that Jerry only made reference to these factors by way of his counsel's opening statement. Jerry claims the award could not be alimony because it does not balance a disparity in income, and it does not terminate on Gwendolyn's death or remarriage. Jerry offered no other evidence, and the bankruptcy court found that the characterization of the award as alimony was, therefore, sufficient evidence of the state court judge's intent.

Jerry also claims the bankruptcy court should have analyzed whether the debt is excepted from discharge as being a support obligation by, instead, considering the *Sturdivant* factors. In *Sturdivant v. Sturdivant (In re Sturdevant)*,[20] the court considered the following: (1) whether the obligation terminates on death or remarriage; (2) the characterization of the payment in the decree and the context in which the provision appears; (3) whether the payments are to balance disparity in income; (4) whether the payments are to be made directly to the spouse or to a third party; (5) whether the obligation is payable in a lump sum or in installments; (6) whether the parties intended to create obligation of support; (7) whether assumption of the debt has the effect of providing the support necessary to insure the daily needs of the former spouse; and (8) whether assumption of the debt has the effect of providing support necessary to insure a home for the spouse and minor children.[21]

In *Sturdivant* the issue was whether debtor's assumption of debt in a divorce was in the nature of support, so the last two factors are not relevant to the issue here.

---

[19]*Id.* at 55.

[20]289 B.R. 392 (Bankr. W.D. Ark. 2003).

[21]*Id.* at 397-98.

Jerry assumed debt, but such debt was offset by an award of property. Moreover, this was a contested divorce, so the intent of the parties is, likewise, not relevant. We conclude that the other factors relied on by Jerry in this appeal weigh in favor of the bankruptcy court's determination that the award is alimony. The obligation is not modifiable, and it does not terminate on Gwendolyn's death or remarriage, however, it was characterized as alimony in two sections of the Decree dealing with spousal support. And Jerry's contention that the award of lump-sum alimony is intended to be a part of the property division is not sustainable, since Judge Kennon divided the parties' property, including their liabilities, in a separate part of the Decree.

The award is payable in monthly installments, and the award is payable directly to Gwendolyn, not to a third party. Judge Kennon did find Gwendolyn had a slightly higher income earning potential than Jerry, however, that disparity is more than offset by the fact that Gwendolyn was awarded residential custody of six children and Jerry was awarded residential custody of one child. Jerry was ordered to pay Gwendolyn child support in the amount of $796.00, to be offset by Gwendolyn's payment of child support to Jerry in the amount of $351.39. Thus, we conclude that the bankruptcy court did not err in finding the state court judge intended this award to be alimony and intended it to balance disparate income that resulted from Gwendolyn's responsibility for six children. Jerry did not present any evidence of the tax treatment of the award, so we will not consider that factor.

We, therefore, conclude that the bankruptcy court did not err when it found the obligation for lump-sum alimony to be nondischargeable.

_____